**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN JARVORIS MOORE,

      Petitioner,                    CASE NO. 2:07-CV-14564
                                        HONORABLE DENISE PAGE HOOD
v.                                   UNITED STATES DISTRICT JUDGE

THOMAS K. BELL,

      Respondent.

_____/

<u>OPINION AND ORDER DENYING THE</u>
<u>PETITION FOR WRIT OF HABEAS CORPUS</u>

      Kevin Jarvoris Moore, ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for first-degree premeditated murder, M.C.L. § 750.316; felon in possession of a firearm, M.C.L. § 750.224f; and possession of a firearm in the commission of a felony, M.C.L. § 750.227b.  For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I.  Background**

      Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court.  Petitioner has provided a detailed statement of facts in his petition for writ of habeas corpus.  Respondent has likewise provided a detailed statement of facts which tend to be consistent with Petitioner's

1

recitation of the facts.  The Court will therefore accept the factual allegations

contained within the habeas petition insofar as they are consistent with the

record, because the Respondent has not disputed them. *See Dickens v. Jones,*

203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).  Because the facts do not need to

be repeated in their entirety, the Court will recite verbatim the relevant facts

regarding Petitioner's conviction from the Michigan Court of Appeals' opinion

affirming his conviction, which are presumed correct on habeas review. *See*

*Dittrich v. Woods,* 602 F. Supp. 2d 802, 803 (E.D. Mich. 2009):

> Defendant was convicted by a jury of first-degree murder, M.C.L. § 750
> .316, felon in possession of a firearm, M.C.L. § 750.224f, and
> possession of a firearm during the commission of a felony, M.C.L. §
> 750.227b, arising from the shotgun shooting death of twenty-year-old
> Hyshanti Johns.
> ********************************************************************************
> Here, the evidence indicated that defendant took a shotgun with him
> when he drove away with the decedent.  He disposed of the weapon
> and the van after the decedent was shot, and also left town.  He told
> different versions of the killing to his girlfriend and to the police,
> claiming that he either shot the decedent because she was a witness
> to another crime or that she attempted to rob him and he shot her in
> "self-defense" as she was running away.  The evidence disclosed,
> however, that the decedent was shot four times by a shotgun, twice in
> the back and twice in the front of her body, and possibly a fifth time
> resulting in a grazing wound.  The shotgun had to be pumped between
> each shot.
> *People v. Moore,* No. 236015, 2003 WL 21419275 * 1-2 (Mich. Ct. App.
> June 19, 2003).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 469 Mich. 1025;

679 N.W. 2d 62 (2004); *reconsideration den.* 469 Mich. 1025; 682 N.W. 2d 93

(2004).  Petitioner then filed a post-conviction motion for relief from judgment, which

2

was denied. *People v. Moore,* No. 00-05882-01 (Wayne County Circuit Court, April 11, 2005); *reconsideration den.* May 31, 2005.  The Michigan appellate courts denied petitioner's post-conviction appeal. *People v. Moore,* No. 269402 (Mich.Ct.App. October 11, 2006); *lv. den.* 477 Mich. 1112; 730 N.W. 2d 223 (2007). Further facts will be discussed when addressing petitioner's claims.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Issuance of a writ of habeas corpus is not barred by any state procedural rule for a failure to raise them on direct appeal, nor by a state procedural [rule], which is insufficient to deny this court habeas review of the claims where Petitioner has demonstrated cause to excuse the default.

II. Petitioner was deprived of his right to due process under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 when he was convicted of murder of the first degree when the evidence adduced by the prosecutor on the elements of premeditation and deliberation was insufficient to persuade any rational trier of the facts of their existence beyond a reasonable doubt.

III. Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution of 1963 when the prosecutor in argument to the jury: (1) testified as to facts not in evidence but of his own personal knowledge; (2) vouched for the credibility of prosecution witnesses; (3) branded certain statements of Petitioner as lies.

IV. Petitioner was deprived of his right under the 5th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution of 1963 to remain silent on trial and of his right under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution of 1963 to due process and a fair trial when the trial prosecutor in argument to the jury adverted to Petitioner's motive for killing the deceased in a manner calculated to

3

bring the jurors' attention [to] the fact that the Petitioner had not testified.

V. Petitioner was deprived of his right under the 5th Amendment and under the 6th Amendment to the United States Constitution and under Sections 17 and 20, Article 1, Michigan Constitution of 1963 when the trial court over objections admitted into evidence on trial an incriminating statement made by Petitioner to the police while in custody in face of evidence by a police officer both on trial and on an evidentiary hearing that while being interrogated Petitioner did request that he have present at the interrogation an attorney.

VI. Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution of 1963 when the trial judge instructed the jurors that the Petitioner claimed that he could not have intended to kill the deceased because he 'was intoxicated with alcohol' when the record does not reflect that Petitioner had made such a claim on trial.

VII. Petitioner was denied his State and Federal right to the effective assistance of trial counsel when counsel failed to object to repeated improper remarks by the prosecutor to the jury preserving the claims for appellate review. US Constitution Amendment VI & XIV; Mich Const Art I, Sec 20.

VIII. Petitioner was denied his state and federal right to confrontation when the trial court restricted defense counsel from rigorous cross-examination of witness Byrd in violation of the Sixth Amendment, U.S. Constitution; Mich.Const.1963; Article I, § 20.

IX. Petitioner was denied his state and federal right to the effective assistance of appellate counsel, Michigan Constitution 1963; Article I, § 20, U.S. Constitution Amendment VI, where his appellate attorney did not raise the above issues in his appeal of right.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in

4

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A.  Claim # 2.  The sufficiency of evidence claim.**

In his first substantive claim, Petitioner contends that there was insufficient evidence of premeditation and deliberation to sustain his conviction for first-

5

degree murder. [1]

The Michigan Court of Appeals rejected Petitioner's claim, finding that there was sufficient evidence for a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation when he shot the victim. The Michigan Court of Appeals noted that the evidence established that Petitioner took a shotgun with him when he drove away with the victim. The evidence established that Petitioner hid the murder weapon and the van after shooting the victim, and subsequently left town. Petitioner told different versions of the killing to his girlfriend and to the police, claiming that he either shot the victim because she was a witness to another crime or that she attempted to rob him and he shot her in "self-defense" as she was running away. The evidence at trial established that the victim was shot four times by a shotgun, twice in the back and twice in the front of her body, and possibly a fifth time resulting in a grazing wound. The shotgun had to be pumped by Petitioner between each shot. The Michigan Court of Appeals concluded that when viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find that the essential elements of first-degree murder, including premeditation and deliberation, had been proven beyond a reasonable doubt. *Moore,* Slip. Op. at * 1-2.

---

[1] As Respondent notes in their answer, Petitioner's first "claim" is actually an argument that his procedurally defaulted claims should be heard on the merits.

6

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003).  Finally, in making a determination whether the state court's application of the *Jackson* standard in resolving petitioner's sufficiency of evidence claim was contrary to, or an unreasonable application of, Supreme Court precedent, this Court must afford the state court's findings of facts a presumption of correctness unless petitioner can establish by clear and convincing evidence that the state court's factual determination was erroneous. *See Williams v. White,* 183 F. Supp. 2d 969, 974 (E.D. Mich. 2002)(internal citations omitted).  Finally, the Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*,

7

194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)).  The elements of

premeditation and deliberation may be inferred from the circumstances

surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596

(E.D. Mich. 2001)(*citing People v. Anderson*, 209 Mich. App. 527, 537, 531 N.

W. 2d 780 (1995)).  Premeditation may be established through the following

evidence:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209

Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is

incapable of exact determination, the interval between initial thought and

ultimate action should be long enough to afford a reasonable man time to

subject the nature of his response to a 'second look.'" *See Williams v. Jones,*

231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)((*quoting People v. Vail,* 393

Mich. 460, 469, 227 N.W. 2d 535 (1975)).  "A few seconds between the

antagonistic action between the defendant and the victim and defendant's

decision to murder the victim may be sufficient to create a jury question on the

issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich.

2003).  An opportunity for a 'second look' may occur in a matter of seconds,

8

minutes, or hours, depending upon the totality of the circumstances surrounding the killing. *Johnson,* 159 F. Supp. 2d at 596(*quoting People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N.W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir. 1998).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation in killing the victim.  The fact that Petitioner fired five shots at the victim would support an inference of premeditation and deliberation. *See People v. Johnson,* 74 Mich. App. 234, 235-36; 253 N.W. 2d 721 (1977)(evidence including fact that murder victim had two bullet wounds in the front of his skull and one in the back and that a total of eight to ten shots were fired in two series with a definite pause between the two series of shots was sufficient to present a jury question whether defendant had engaged in the premeditation and deliberation required for conviction of first-degree murder).  Evidence that Petitioner shot the victim twice in the back is also evidence of premeditation. *See e.g. Young v. Withrow,* 39

9

Fed. Appx. 60, 62 (6th Cir. 2002).   The fact that Petitioner had to pump or "rack" the shotgun before each shot was also sufficient to establish that petitioner acted with premediation and deliberation. *See Wilson v. Birkett,* No. 01-10107, 2004 WL 63963, * 7 (E.D. Mich. January 8, 2004).  There was also evidence that Petitioner hid the murder weapon after the shooting.  Evidence that petitioner disposed of the murder weapon also supports a finding of premeditation and deliberation. *See Marsack v. Howes*, 300 F. Supp. 2d  483, 492 (E.D. Mich. 2004).  Finally, the fact that petitioner attempted to elude the police after the arrest would also support a finding of premeditation and deliberation. *Id.*

In the present case, there was sufficient evidence for a rational trier of fact to determine that Petitioner committed the murder with premeditation and deliberation, so as to support his conviction for first-degree murder.  Even if there was evidence presented which could have supported a verdict of manslaughter or even Petitioner's self-defense theory, this Court must view the evidence in a light most favorable to the prosecution and the jury was not required to accept Petitioner's version of the facts. *See Williams,* 231 F. Supp. 2d at 595.  Petitioner is not entitled to habeas relief on his second claim.

**B.  Claims # 3, # 4, and # 7.  The prosecutorial misconduct/ineffective assistance of counsel claims.**

In his third and fourth claims, Petitioner contends that he was deprived of a fair trial because of prosecutorial misconduct.  In his related seventh claim,

Petitioner contends that counsel was ineffective for failing to object to the misconduct.   For purposes of judicial economy, this Court will address Petitioner's prosecutorial misconduct claims along with his related ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002).

Respondent contends that Petitioner's prosecutorial misconduct claims are procedurally defaulted, because he failed to object to the prosecutor's remarks at trial.  As mentioned above, Petitioner alleges that trial counsel was ineffective for failing to object to this alleged misconduct.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

When a Petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355-56 (6th Cir. 1993).  In evaluating

11

prosecutorial misconduct in a habeas case, consideration should be given to the

degree to which the challenged remarks had a tendency to mislead the jury and

to prejudice the accused, whether they were isolated or extensive, whether they

were deliberately or accidentally placed before the jury, and, except in the

sentencing phase of a capital murder case, the strength of the competent proof

against the accused. *Id.*

In his third claim, Petitioner contends that the prosecutor testified as to

facts that had not been introduced into evidence, vouched for the credibility of

witnesses, and branded certain statements made by Petitioner as being "lies."

The actions of a prosecutor in misrepresenting facts in evidence can

amount to substantial error, because doing so "may profoundly impress a jury

and may have a significant impact on the jury's deliberations." *Washington v.*

*Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo,*

416 U.S. 637, 646 (1974)).  In addition, asserting facts that were never admitted

into evidence may mislead a jury in a prejudicial way. *Id.*  However, prosecutors

must be given leeway to argue reasonable inferences from the evidence. *Byrd v.*

*Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

In addition, a prosecutor may not express a personal opinion concerning

the guilt of a defendant or the credibility of trial witnesses, because such

personal assurances of guilt or vouching for the veracity of witnesses by the

12

prosecutor "exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd,* 209 F.3d at 537.  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

In the present case, the prosecutor's comments did not imply any personal knowledge on the part of the prosecutor, but were instead proper comments on the evidence that had been introduced at trial and any reasonable inferences that could be drawn from them.  The statements of the prosecutor, made during

13

closing arguments, which Petitioner challenges involve speculation regarding

Petitioner's choice of location, manner of the shooting, and the disposal of the

victim's body.  In particular, the prosecutor made the following statements:

> [Petitioner] first scouts out a location.  Then he decides, he selected
> O'Shea Park.  He decides it's got characteristics that he likes.  It's
> secluded.  It's desolate.  Because of the way the 96 Expressway
> has gone through there, you basically got one way in, one way out.
> He didn't have to worry about the officers coming from the north to
> that O'Shea Park unless they are on foot, walking, not coming off I-
> 96 Expressway in effect.

(Tr. 4/19/2001, p. 106).

> When she comes in at 6:00 in the morning, he had it hidden
> somewhere.  She doesn't see it until remember she got ready to
> draw a bath and it's by happenstance, by kind of luck that she is
> able to see how he is holding the weapon.  Carrying it on the side to
> hide the gauge.  Lures Ms. Johns to go with him, over to O'Shea
> Park.  Out of the van.  Get the gauge out.  Got to release the safety.
> Make it fire ready.  Chamber the first.  Shoot her, after aiming,
> because but for grace, he is batting 80 per cent, four out of five.
> Operate the pump.  Aim and fire four times.  Operate the pump, aim
> and fire a fifth time.

(*Id.*, p.107)

> Lavelley said when you operate the pump, after you discharge it,
> you eject the shell.  If he shot five, he would have had to leave four
> behind.  Only three there.  Took the time to pick up the shell.

(*Id.*)

> Discard [the victim].  Discards her.  Drives off, you know.  You take
> your own interpretation, I think he probably either shot her in one
> location, then jockeyed the that truck around, tried to get her back in
> the woods there to dump in a spot where she wouldn't be found real
> quick.  And that explains the L-shaped jockeying, done in a hurry,
> because by golly, Mr. Butler is sleeping maybe 150 feet away.  And

14

>   goodness knows maybe the defendant saw Butler's lights go on
>   when he's making sure, what did Mr. Butler say, none of the rounds
>   infiltrated his home.

(*Id.*, p. 108)

After review of the trial transcript, these statements constitute reasonable

inferences from evidence presented at trial. The testimony regarding how

Petitioner brought the victim to an isolated area of the park was a reasonable

inference based upon the facts in evidence.  There was testimony in the record

as to the nature and geographic location from where the victim's body was

recovered.  (Tr. April 17, 2001, p. 12, 18-19, 21).  Similarly, there was sufficient

testimony in the record for the prosecutor to make reasonable inferences as to

how the killing occurred, and the discovery of the shotgun shells.  Dr. Young A.

Chung, the forensic pathologist who performed the victim's autopsy, testified that

the victim received four shots to the body: one to the back of her head, one was

to the left upper abdomen, one to the right of the groin area, and the final to her

left lower back.  (Tr. April 17, 2001, p. 141-43).  Toward this end, Officer Susan

Levalley, a firearms identification examiner, testified that she examined the

subject 12-guage Remington fired shotgun shells that were each fired from the

same weapon and found at the scene of the crime.  She also testified that the

shotgun was loaded with a shotgun shell, and that prior to discharging the

weapon a second time, the shooter must first rack the pump back in order to

eject a previously lodged shell.  (Tr. 4/18/2001, p. 82-85, 88-89).  Finally, the

15

prosecutor offered speculation as to the manner in which the body was disposed of in the woods through the use of the truck.  While this testimony is arguably supported by the factual evidence of tire markings (Tr.  April 17, 2001, p. 44-45), it was also couched in terms qualifying the remark's speculative nature, i.e., "You take your own interpretation, I think he probably either shot her in one location, then jockeyed the truck around..."  (Tr. April 19, 2001, p. 108).  *Byrd,* 209 F.3d at 536 ("We find the remarks did not mislead the jury, because the prosecutor qualified the remarks ...  jurors would know that these comments were inferences, and they would not be confused to believing that these comments were factual evidence.").  Accordingly, Petitioner has failed to show that the prosecutor injected facts that had not been introduced into evidence or had impermissibly vouched for the credibility of the witnesses.

Finally, the prosecutor's comments about Petitioner being a liar were made when the prosecutor was comparing Petitioner's different stories with the testimony of the other witnesses.  (Tr. April 19, 2001, p. 113).  The prosecutor's remarks reflect reasonable inferences from evidence adduced at trial, and thus it was not improper for the prosecutor to suggest that Petitioner was lying. *See United States v. Johnson,* 169 Fed. Appx. 946, 950 (6th Cir. 2006).

Finally, any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation, in light of the fact that the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge

16

instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony (Tr. 4/19/2001, p. 139, 141-43). *Byrd,* 209 F. 3d at 537-38.

In his fourth claim, Petitioner contends that it was improper for the prosecutor to comment that only Petitioner and the victim knew Petitioner's motive for the killing, claiming that this amounted to an impermissible comment on Petitioner's failure to testify.

In *Griffin v. California*, the United States Supreme Court held that neither the court nor the prosecutor may invite the jury to infer guilt from the defendant's decision not to testify.  380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). They may not "solemnize [ ] the silence of the accused into evidence against him,"*Id.*, or "suggest[ ] to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) (emphasis added).  However, while a prosecutor may not comment on the defendant's failure to testify or produce evidence, the prosecutor may summarize the evidence and comment upon "its quantitative and qualitative significance." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994)

When a prosecutor's remark or statement indirectly comments on a habeas petitioner's decision not to testify, a federal court in the Sixth Circuit should use four factors to evaluate such a statement: "1) Were the comments

17

'manifestly intended' to reflect on the accused's silence *or* of such a character that the jury would 'naturally and necessarily' take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; 4) what curative instructions were given and when." *Bowling v. Parker,* 344 F.3d 487, 514 (6th Cir. 2003)(*quoting Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988)).  In reviewing indirect comments touching on a defendant's failure to testify, a court should not find a manifest intent to comment on the right to remain silent if some other explanation for the prosecutor's remarks is equally plausible, such as when a comment is a fair response to a claim made by the defendant or his counsel. *See Gall v. Parker,* 231 F.3d 265, 311 (6th Cir. 2000)(internal citations omitted).

In the present case, there were witnesses other than Petitioner or the victim who could have provided evidence as to Petitioner's motive for the killing. (*See e.g.* Tr. 4/17/2001, p. 121-126) (Sharita Hutson's testimony regarding Petitioner's multiple confessions).  The prosecutor's remarks did not amount to an improper reference to Petitioner's failure to testify.  In addition, Petitioner would not be entitled to habeas relief on this claim, because the prosecutor's remarks were neither flagrant or repeated. *Joseph,* 469 F. 3d at 474.  Petitioner would finally not be entitled to habeas relief on this claim, in light of the trial court's instruction to the jury about Petitioner's right not to testify. (Tr. 4/19/2001, p. 138). *Id.*

18

Finally, in deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). Where a prosecutor's conduct does not have a substantial or injurious effect on the outcome of the trial, habeas relief should be denied. *See Maurino v. Johnson*, 210 F.3d 638, 644 (6th Cir. 2000). In light of the evidence of guilt in this case, including Petitioner's own admission to both the police and to his girlfriend that he killed the victim, the prosecutor's comment that only Petitioner and the victim knew the motive for the killing did not have a substantial and injurious effect or influence on the case so as to entitle Petitioner to relief on his claim.

The Court will likewise reject Petitioner's ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his

19

trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

Because the prosecutor's conduct was either not improper or harmless error, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003). Petitioner is not entitled to relief on his third, fourth, and seventh claims.

### C.  Claim # 5.  The custodial statement claim.

Petitioner next claims that the trial court erred in denying his motion to suppress his statement to the police, claiming that he had invoked his right to counsel during the police interrogation.

Prior to trial, an evidentiary hearing was conducted on July 25, 2000 in the trial court on Petitioner's motion to suppress the statement. Sergeant Gardner testified that after being taken into custody, Petitioner gave him a telephone number and asked him to call it. The phone number was a number to a lawyer's office. Sergeant Gardner called the number and subsequently informed petitioner that he had reached an answering service or answering machine. Sergeant Gardner testified that Petitioner put the card back into the pocket. Sergeant Gardner then read Petitioner his constitutional rights from an advice of

20

rights card and asked Petitioner whether he wished to speak with him.  Gardner testified that Petitioner agreed to make a statement.  According to Gardner, Petitioner never asked to speak with an attorney.

Petitioner testified that he asked Sergeant Gardner to call attorney Alicia Jones, because he was not going to answer any questions until he had an attorney present.  When Gardner returned after making the phone call, Petitioner again informed him that he wanted an attorney present before he would make a statement.  Petitioner claimed that he asked for an attorney three or four times before the questioning began.

On August 4, 2000, the trial court denied Petitioner's motion to suppress. The trial court determined that although Petitioner invoked his right to counsel when he gave the attorney's phone number to Sergeant Gardner, the trial court further found that Petitioner subsequently agreed to speak with Gardner.  The trial court further found that Petitioner never again asked to speak with an attorney nor asked for the interrogation to cease.  The trial court specifically found that there was no further request by Petitioner to speak with an attorney after being informed by Sergeant Gardner after making the phone call that his first attorney was not available (Tr. 8/4/2000, pp. 4-5).

Once an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available,

21

unless the accused initiates further conversation with the police. *Edwards v.*
*Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981).

In the present case, Petitioner most likely invoked his right to counsel by
giving Sergeant Gardner the name and telephone number of his attorney and
asking Sergeant Gardner to call her. *See Abela v. Martin,* 380 F.3d 915, 926 (6th
Cir. 2004)(statement "maybe I should talk to an attorney by the name of William
Evans" was an unequivocal request for counsel where the suspect specifically
named his attorney and gave the police officer the attorney's business card).
However, when Petitioner was informed by Sergeant Gardner that he was
unable to contact his attorney, Petitioner put the card back into his pocket.  It is
unclear whether it was Sergeant Gardner or Petitioner who reinitiated the
subsequent conversation.  What is troublesome to this Court is that after
attempting to contact Petitioner's lawyer, Sergeant Gardner clearly began asking
questions of petitioner to see if he wished to make an incriminating statement.
Under the circumstances, the Michigan courts may have erred in finding that it
was Petitioner, and not the officer, who reinitiated the interrogation after
Petitioner had invoked his right to counsel. *Compare U.S. v. Ware,* 338 F.3d
476, 481 (6th Cir. 2003)(detective's question, "Any other suggestions or
guesses?" did not constitute interrogation in violation of *Miranda*, after arrestee
had invoked his right to counsel; such question was posed immediately after
arrestee was informed that the attorney the arrestee wished to speak to could

22

not be located, so that the question was aimed at acquiring counsel for defendant rather than at eliciting incriminating information).

However, assuming that *Edwards* applies, Petitioner is unable to show how he was prejudiced. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). Thus, on habeas review, a conviction may be reversed if the improper admission of a Petitioner's statements, in violation of his or her right to counsel, had a substantial and injurious effect or influence in determining the jury's verdict. *See Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999).

In the present case, even if Petitioner was interrogated in violation of *Edwards v. Arizona*, the admission of these statements that he made to Sergeant Gardner did not result in actual prejudice to Petitioner, because his confession that he shot the victim was duplicative of other evidence that was introduced in this case, including testimony from Petitioner's girlfriend that he admitted shooting the victim to her, as well as Angelene Doss' testimony that she observed the victim and Petitioner leaving her apartment together on the morning of the murder, while Petitioner was armed with a shotgun. *See Kyger v. Carlton*, 146 F.3d 374, 382-83 (6th Cir. 1998). Petitioner is not entitled to

23

habeas relief on this claim.

### D. Claim # 6. The jury instruction claim.

Petitioner next contends that the trial court erred in giving the jury an instruction on intoxication as a defense to the charges, in light of the fact that Petitioner did not present an intoxication defense.

In the present case, the Michigan Court of Appeals reviewed Petitioner's claim for plain error, in light of the fact that Petitioner failed to object to the instruction. Although the Michigan Court of Appeals agreed that there was little evidence to support the giving of the instruction, "we fail to see how defendant was prejudiced by the fact that the instruction was given." *Moore,* Slip. Op. at * 3-4.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). To warrant habeas

24

relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott*, 209 F.3d at 882.  Allegations of trial error raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id.*

Petitioner is unable to show that he was prejudiced by the giving of an instruction on the defense of intoxication, as this could only have helped the defense.  The defense of voluntary intoxication may be raised where the crime charged involves a specific intent as a necessary element of the crime because intoxication may negate the specific intent. *People v. Langworthy*, 416 Mich. 630, 638, 331 N.W. 2d 171 (Mich. 1982).  Voluntary intoxication is a defense to first-degree premeditated murder that, if proven, will reduce the charge to second-degree murder. *Id.* at 646-47.  Intoxication is also a defense to the specific intent crime of assault with intent to commit murder. *People v. Crittle*, 390 Mich. 367, 372, 212 N.W. 2d 196 (Mich. 1973); *overruled on other grds* 419 Mich 118 (Mich. 1984).

Because the intoxication instruction could only have worked to petitioner's benefit, Petitioner is not entitled to habeas relief on this claim. *See Karis v. Calderon,* 283 F. 3d 1117, 1132 (9th Cir. 2002)(petitioner not entitled to habeas relief where erroneous jury instruction could have worked to petitioner's benefit).

25

**E.  Claim # 8.  The Confrontation Clause claim.**

Petitioner claims that he was denied his right to confrontation when the trial court refused to allow defense counsel to question a witness named Marcus Byrd regarding what Antonio Jackson had told him about the shooting.  The trial court excluded the testimony on the ground that it was hearsay. (Tr. 4/18/2001, p. 129).

"The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish."  *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988)(internal citations omitted).  The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).  Where it is merely the extent of cross-examination into a certain area that is limited, the trial judge retains much wider latitude of discretion, although that discretion may still be abused. *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir. 1989).  Moreover, an accused in a criminal

26

case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996)(*quoting Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

In the present case, the limitation placed on the cross-examination of Byrd involved a situation in which defense counsel was attempting to elicit hearsay evidence.  The Confrontation Clause is not violated by limiting the questioning of witnesses on the grounds that the evidence is hearsay or irrelevant. *See Takacs v. Engle,* 768 F.2d 122, 125 (6th Cir. 1985); *Dell v. Straub*, 194 F.Supp.2d 629, 644 (E.D.Mich. Feb 28, 2002).  Therefore, the trial court's exclusion of this evidence on the grounds that it was hearsay did not violate Petitioner's right to confrontation.

### F.  Claim # 9.  The ineffective assistance of appellate counsel claim.

Petitioner lastly claims that appellate counsel was ineffective for failing to raise his seventh and eigth claims in his appeal of right.

In this case, the Court has determined that petitioner's seventh, and eighth claims lack merit.  Accordingly, appellate counsel was not ineffective in failing to properly raise these claims in his appeal of right. *See Malcum,* 276 F. Supp. 2d at 678.  In addition, Petitioner is unable to show that he was prejudiced by appellate counsel's failure to properly preserve these claims, in light of the fact

that these same claims were presented to the Michigan trial and appellate courts on Petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F.2d 264, 265-67 (6th Cir. 1983); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on Petitioner's motion for post-conviction relief granted Petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise these claims in Petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F.2d 183, 189 (1st Cir. 1987)).  Consequently, there is no need to remand this case for the state court's reconsideration as they have already made an adverse determination. *Gardner*, 817 F. 2d at 189.  Petitioner is not entitled to habeas relief on his final claim.

## IV.   ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  June 23, 2009

I hereby certify that a copy of the foregoing document was served upon Kevin Moore, Reg. No. 353571, Carson City Correctional Facility, 10522 Boyer Rd., Carson City, MI 48811 and counsel of record on June 23, 2009, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager

28